IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-226-FL(2)

| | |
|---|---|
| CONNIE L. HARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Connie L. Harrison ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for Supplemental Social Security Income ("SSI") benefits. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

[DE #24] be denied, Defendant's Motion for Judgment on the Pleadings [DE #28] be granted, and the Commissioner's decision be affirmed.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for SSI on March 1, 2011, alleging disability beginning July 1, 2009. (R. 138, 181.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 153, 177, 181, 221.) On January 8, 2013, a hearing was held before Administrative Law Judge ("ALJ") Catherine Harper, who issued an unfavorable ruling on January 29, 2013. (R. 181, 191.) On April 22, 2014, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's January 2013 decision, and remanded the case for a new hearing before an ALJ. (R. 196-99.)

On September 24, 2014, ALJ Harper conducted another hearing, at which both Plaintiff and her attorney were present. (R. 15.) On January 12, 2015, ALJ Harper again issued an unfavorable ruling. (R. 31.) The Appeals Council denied Plaintiff's request for review on March 4, 2016. (R. 1.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four

3

steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since March 11, 2011, the application date. (R. 17.) Next, the ALJ determined Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease ("COPD")/asthma, alcohol dependence in reported remission, and adjustment disorder with depressed mood." (*Id.*) The ALJ found several non-severe impairments based on previous medical conditions, including pancreatitis, breathing problems, cocaine dependence, tuberculosis, fractured ankle, and hypertension. (R. 17-18.) The ALJ noted that there is "no evidence of functional limitations" stemming from these impairments and thus labeled them as non-severe. (*Id.*)

At step three, the ALJ concluded, after an extensive discussion of multiple listings, that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-23.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform light exertional work as defined in 20 CFR 416.967(b) with exceptions. The claimant should

4

avoid concentrated exposure to temperature extremes of heat and cold, poorly ventilated areas, and pulmonary irritants such as dust, odors, and gases. The claimant is limited to simple, routine, repetitive tasks in a low-stress job, defined as having only occasional changes in the work setting. Furthermore she should not perform any fast-paced production rate or pace work.

(R. 23.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (R. 29.) At step four, the ALJ concluded Plaintiff had past relevant work as a fast food worker and a mail sorter. (*Id.*) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. 30.) Specifically, the ALJ found Plaintiff capable of performing the following jobs: laundry classifier, remnant sorter, and can conveyor feeder. (*Id.*)

## IV. Listing 12.02 (Organic Mental Disorder)

Plaintiff's only argument on review is that the ALJ erred in her conclusion that Plaintiff did not meet Listing 12.02 (Organic Mental Disorder). (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #25] at 6-20.) For the reasons discussed below, the undersigned disagrees and finds that substantial evidence supports the ALJ's findings regarding Listing 12.02. Therefore, the undersigned recommends that the Commissioner's decision be affirmed.

A "severe" impairment within the meaning of the regulations is one that "significantly limits . . . [a claimant's] physical or mental ability to do basic work

5

activities."² 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely, an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." SSR 85-28, 1985 WL 56856, at *3 (Nov. 15, 1985); *see also Evans v. Heckler,* 734 F.2d 1012, 1014 (4th Cir. 1984). The claimant has the burden of demonstrating the severity of her impairments. *Pass*, 65 F.3d at 1203.

At step two of the sequential evaluation process, the ALJ must determine whether a claimant's impairment(s), individually or in combination, are "severe." 20 C.F.R. §§ 404.1523, 416.923. So long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process. *Id.; see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining that the existence of one or more severe impairments requires the ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

In determining whether a listing is met or equaled, an ALJ must consider all evidence in the case record about the claimant's impairments and their effects on the claimant. 20 C.F.R. § 404.1526(c). Where a claimant has a severe impairment and

---

² Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986) (citing 20 C.F.R. § 416.921(b)). For example, work activities might include walking, standing, sitting, lifting, pushing, pulling, and reaching; the capacity to see, hear and speak; and understanding, carrying out, and remembering simple instructions. *Id.*

6

the record contains evidence that symptoms related to the impairment "correspond to some or all of the requirements of a listing," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's requirements. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). While it may not always be necessary for the ALJ to perform a "step-by-step" analysis of the listing's criteria, the ALJ must evaluate the claimant's symptoms in light of the specified medical criteria and explain his rationale. *Williams v. Astrue*, No. 5:11–CV–409–D, 2012 WL 4321390 (E.D.N.C. Sept. 20, 2012). An ALJ's failure to compare a claimant's symptoms to the relevant listings or to explain, other than in a summary or conclusory fashion, why the claimant's impairments do not meet or equal a listing "makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013); *see also Cook*, 783 F.2d at 1173.

A claimant meets the criteria for Listing 12.02 (Organic Mental Disorder)[3,4] if history and medical evidence "demonstrate the presence of a specific organic factor

---

[3] As Plaintiff notes, she technically seeks qualification for Listing 12.09 (Substance Addiction Disorder). (Pl.'s Mem. Supp. Mot. J. Pldgs. at 15.) Listing 12.09 requires proof that a claimant satisfies the requirements of at least one of several other specified listings, including Listing 12.02. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.09(A) (effective Jan. 2, 2015, through May 17, 2015). Here, Plaintiff contends that she meets the criteria for Listing 12.09 because she meets the criteria for Listing 12.02. Therefore, the instant discussion focuses on Listing 12.02.

[4] The listing has been updated since the date of the ALJ's decision. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.00-12.02 (effective Mar. 27, 2017, through Jan. 17, 2022); 82 Fed. Reg. 5872 (Jan. 17, 2017); 81 Fed. Reg. 66161 (Sept. 26, 2016). The undersigned reviews the ALJ's decision based on the version of Listing 12.02 that was in effect at the time of the ALJ's decision. *See* 81 Fed. Reg. 66138 n.1 (Sept. 26, 2016)

judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02 (introductory paragraph). A claimant must satisfy (i) the introductory paragraph; and (ii) the requirements in both paragraphs A and B, or the requirements in paragraph C. Here, Plaintiff contends that she satisfies the requirements of the introductory paragraph and paragraphs A and B. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 20.)

Plaintiff contends that she meets the requirements of the introductory paragraph because her substance addiction disorder is etiologically related to her reduced intellectual ability (abnormal mental state) and the loss of work-related functions. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 14-16.) The Commissioner argues that the ALJ appropriately considered this and ruled it out, reasoning that the fourteen-point reduction in IQ score that Plaintiff received in 2006 (in comparison to an IQ score received in 1981) was a temporary result possibly caused by "recent consumption of drugs and/or alcohol." (*Id.*; R. 19.) Thus, the Commissioner denies that Plaintiff has an abnormal mental state which would satisfy the requirement of the introductory paragraph.

The Commissioner's defense of the ALJ's reasoning is unpersuasive because the ALJ's reasoning is speculative. In considering the 67 IQ score that Plaintiff

---

(noting that federal judicial review should apply the regulations in effect at the time of the final agency decision but that any amended regulations will be applied if a matter is remanded for further administrative proceedings after the effective date of the amended regulations); *see also Arrieta v. Astrue*, 301 F. App'x 713, 715 n.1 (9th Cir. 2008) (applying listing in effect on date of application). All references herein are to the version of Listing 12.02 in effect at the time of the ALJ's decision.

8

received in 2006, the ALJ concluded that it was "very probable" that Plaintiff had consumed alcohol or cocaine "on the day of testing or the day before" based solely on the fact that Plaintiff did not deny continuing use of cocaine to the testing administrator and admitted that she drank alcohol on a daily basis. (R. 19.) But there is no evidence in the record, other than these generalized statements, showing that Plaintiff was intoxicated or experiencing the after-effects of cocaine or alcohol consumption during the IQ testing. The ALJ criticized as "purely speculative," the Appeals Council's remand order directing her to consider whether Plaintiff's substance abuse could explain the decline in IQ scores. (R. 19.) However, the ALJ's reasoning that the reduction in IQ scores could have been a result of temporary impairment caused by recent consumption is similarly speculative. The ALJ's finding that Plaintiff fails to satisfy the introductory paragraph of Listing 12.02 is not supported by substantial evidence.

Notwithstanding the ALJ's error, a claimant meets Listing 12.02 only if her intellectual disorder is characterized by (i) loss of specific cognitive abilities or affective changes; and (ii) "medically documented persistence" of at least one of seven conditions listed.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02(A). Plaintiff argues that

---

[5] The conditions are (1) "[d]isorientation to time and place"; (2) "[m]emory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past)"; (3) [p]erceptual or thinking disturbances (e.g., hallucinations, delusions)"; (4) "[c]hange in personality"; (5) mood disturbances; (6) "[e]motional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control"; and (7) "[l]oss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02(A).

9

she demonstrated (1) the loss of specific cognitive abilities, (2) affective changes, (3) medically documented persistence of memory impairment satisfying § 12.02(A)(2), and (4) medically documented persistence of thinking disturbances satisfying § 12.02(A)(3). (Pl.'s Mem. Supp. Mot. J. Pldgs. at 16-18.)

The ALJ summarily concluded that Plaintiff "did not demonstrate a loss of specific cognitive abilities or affective changes." (R. 21.) Plaintiff argues that the evidence in the record showing that her IQ dropped by fourteen points from adolescence to adulthood is sufficient to carry her burden to satisfy paragraph A's requirement that she demonstrate loss of specific cognitive abilities. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 16-17.) As stated above, the ALJ's reasoning about the fourteen-point reduction in Plaintiff's IQ score from 1981 to 2006 is speculative and not supported by substantial evidence. Because the ALJ provided no other basis to support her finding that Plaintiff had not demonstrated a loss of specific cognitive abilities or affective changes, the undersigned concludes that the ALJ's finding about this component of paragraph A is not supported by substantial evidence.

Similarly, the ALJ offered no explanation for her finding that Plaintiff failed to demonstrate affective changes. (R. 21.) Plaintiff cites to medical evidence in the record from a state consultative psychiatric examiner and her primary care physician diagnosing her with Adjustment Disorder and Depressive Disorder, respectively, as evidence of affective changes. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 17; R. 727, 749.) Indeed, the ALJ characterized Plaintiff's Adjustment Disorder with Depressed Mood as a severe impairment. (R. 17.) Such medical evidence is sufficient to carry Plaintiff's

10

burden as to this requirement of paragraph A. Therefore, Plaintiff met her burden to demonstrate loss of specific cognitive abilities or affective changes, and the ALJ failed to identify substantial evidence to support her contrary finding.

Plaintiff's argument concerning the second half of paragraph A, however, is unpersuasive. The ALJ concluded, without explanation, that Plaintiff "showed no medically documented persistence" of any of § 12.02(A)(1)-(7). (R. 21.) Plaintiff asserts, without identifying any specific evidence in the record, that "[m]edically documented persistence of 'memory impairment' and 'thinking disturbances' are also present in the record." (Pl.'s Mem. Supp. Mot. J. Pldgs. at 18.)

Moreover, the undersigned's review of the medical record reveals that only two of four mental health examiners mentioned Plaintiff's memory capacity. (R. 488, 726.) The August 2006 cognitive examination conducted by Dr. David Goodman and Edward English, M.A., concluded that Plaintiff's memory functioning was "slightly higher across the board than her cognitive level" and her memory deficiencies placed her in the "low 'borderline' range." (R. 488.) The January 2012 examination conducted by Dr. Christopher Ricci noted that Plaintiff's "[r]ecent and remote memory skills appeared mildly-to-moderately impaired secondary to possibly limited intellectual functioning as evidenced by her ability to recall 3 out of 3 objects immediately and 1 out of 3 after 5 minutes." (R. 726.) Even assuming that evidence of such mild memory impairment would be sufficient to support a finding of medically documented persistence of memory impairment pursuant to Listing § 12.02(A)(2), it is not so

compelling as to support Plaintiff's argument that the ALJ's contrary findings are unsupported by substantial evidence.

Likewise, only one of four mental health examiners noted any evidence of thinking disturbances (R. 549-50); the remaining three examiners each noted no evidence of thought disorder, hallucinations, delusions, or paranoia (R. 482, 487, 726). Moreover, the only evaluation to mention thinking disturbances was conducted approximately four years after two of the examinations and two years before the last examination. Plaintiff has failed to carry her burden to demonstrate medically documented persistence of thinking disturbances pursuant to § 12.02(A)(3). Thus, the ALJ's finding about this component of paragraph A is supported by substantial evidence.

Plaintiff's arguments regarding the paragraph B criteria are also unpersuasive. Paragraph B requires that a claimant demonstrate at least two of the following four limitations resulting from her paragraph A symptoms: (1) "[m]arked restriction of activities of daily living"; (2) "[m]arked difficulties in maintaining social functioning"; (3) "[m]arked difficulties in maintaining concentration, persistence, or pace"; or (4) "[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.02(B)(1)-(4). A limitation is "marked" if it "interferes seriously with [one's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). Here, Plaintiff contends that she demonstrated marked restriction of daily living activities, marked difficulties in maintaining social functioning, and marked

difficulties in maintaining concentration, persistence, or pace. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 18-20.) Despite Plaintiff's failure to carry her burden to satisfy each requirement of paragraph A, the undersigned has also reviewed the paragraph B criteria.

The ALJ found that Plaintiff did not have marked restrictions in daily living activities. (R. 20.) In support of this finding, the ALJ cited prison records tending to show Plaintiff's independence with respect to daily living activities; 2010 statements from Plaintiff that she cooked, cleaned, and helped with household chores; and testimony at the hearing that she cooked for her grandmother. (*Id.*)

Plaintiff argues that the ALJ erred by failing to explain the difference between the ALJ's finding that Plaintiff's deficits regarding the paragraph B criteria were only mild-to-moderate and "the findings of the Appeals Council . . . which tend to weigh in favor of more severe paragraph B deficits." (R. 19.) Contrary to Plaintiff's argument, the Appeals Council's remand of the previous ALJ decision did not fix or bind the ALJ to certain factual findings on re-hearing. Furthermore, the evidence cited in the Appeals Council's remand order tending to show more severe deficits regarding daily living activities was transitory, as evidenced by Plaintiff's own testimony at her second ALJ hearing. (R. 20.) The objective evidence cited by the Appeals Council was unchanged on re-hearing, and Plaintiff submitted no additional evidence tending to show that she was more severely restricted in daily living activities. The ALJ discussed evidence of Plaintiff's daily living skills dating from 2005 through the date of the hearing and found that Plaintiff did not have marked

13

difficulty regarding daily living activities. (R. 20.) Substantial evidence supports that finding.

The ALJ also found that Plaintiff did not have marked difficulties in social functioning. In support of this finding, the ALJ cited three mental health evaluations indicating that Plaintiff was capable of interacting normally with others and Plaintiff's testimony that she spends time with her grandmother, has a boyfriend, and socializes with friends at her grandmother's house. (R. 20.) Plaintiff appears to argue that her difficulty in making appropriate decisions is sufficient to show marked restriction in social functioning. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 19.) Even assuming that Plaintiff struggles to make appropriate decisions, any deficit in that aspect of social functioning would be counter-balanced by evidence that she spends time with her grandmother regularly, has a boyfriend, socializes with friends at her grandmother's house, and has no history of problematically relating to other people. (R. 20.) The ALJ cited these facts in determining that Plaintiff did not have marked restrictions in social functioning (R. 20), and the ALJ's finding in this regard is supported by substantial evidence.

With regard to concentration, persistence, or pace, the ALJ found Plaintiff moderately impaired. (R. 20.) In support of this finding, the ALJ cited Dr. Carol Gibbs' March 2010 psychological report, which noted Plaintiff appeared capable of understanding simple, repetitive tasks and some complex tasks; the lack of any learning disabilities according to both Plaintiff and Plaintiff's mother; and Plaintiff's ability to perform basic household tasks. (R. 20.)

Plaintiff contends that "incontrovertible evidence" from the four mental health assessments she received from 2006 through 2012 demonstrates that she suffers marked difficulty regarding concentration, persistence, or pace. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 19.) Plaintiff cites to commentary in the various mental health assessments indicating Plaintiff's previously discussed mild memory impairment. (Pl's Mem. Supp. Mot. J. Pldgs. at 20.) The only medical evidence that Plaintiff identifies to support her claim that she suffers from marked limitation in this area is Dr. Ricci's January 2012 statement that Plaintiff "appears capable of following and understanding some simple directions and instructions, but likely would need significant training and supervision when learning even new simple tasks." (*Id.*; R. 727.) The ALJ did not address this statement from Dr. Ricci. That is a failure of the ALJ's duty to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7 (Jul. 2, 1996). This error does not require remand, however. Paragraph B requires a claimant to prove marked restrictions in at least two of the four areas of functioning. Even assuming the ALJ's finding with regard to Plaintiff's concentration, persistence or pace is not supported by substantial evidence, Plaintiff has not demonstrated that the ALJ erred in finding that Plaintiff was not markedly restricted in the other areas of functioning.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #24] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE #28] be GRANTED, and the Commissioner's decision be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **May 18, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district

judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 4th day of May 2017.

_____
KIMBERLY A. SWANK
United States Magistrate Judge