IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-226-FL

| | | |
|---|---|---|
| CONNIE L. HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 24, 28). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank entered a memorandum and recommendation ("M&R"), wherein it is recommended that this court deny plaintiff's motion, grant defendant's motion, and affirm defendant's final decision. Plaintiff timely filed an objection to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, this court adopts the M&R as its own, grants defendant's motion, denies plaintiff's motion, and affirms defendant's final decision.

## BACKGROUND

On March 1, 2011, plaintiff filed an application for supplemental security income, alleging disability since July 1, 2009. The application was denied initially and upon reconsideration. Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), who, after a January 8, 2013, hearing, denied plaintiff's claim by decision entered January 29, 2013. Following the ALJ's denial of her application, plaintiff timely filed a request for review with the Appeals Council, which vacated the ALJ's decision and remanded the case for a new hearing before an ALJ. On September

24, 2014, the ALJ conducted another hearing, and on January 12, 2015, again issued an unfavorable ruling. The Appeals Council denied plaintiff's request for review on March 4, 2016. Plaintiff then filed a complaint in this court on May 10, 2016, seeking review of defendant's decision.

**COURT'S DISCUSSION**

A.    Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted)). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 1, 2011, her application date. At step two, the ALJ found that plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD")/asthma, alcohol dependence in reported remission, and an adjustment disorder with depressed mood. However, at step three, the ALJ determined that these impairments were not severe enough, viewed either individually or in combination, to meet or medically equal those in the Listing of Impairments ("Listings"), found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Before proceeding to step four, the ALJ determined that during the relevant time period, plaintiff had the residual functional capacity ("RFC") to perform light exertional work, as defined in 20 C.F.R. § 416.967(b), with exceptions.[1] In particular, plaintiff should avoid concentrated exposure to temperature extremes of heat and cold, poorly ventilated areas, and pulmonary irritants, such as dust, odors, and gases. Further, the ALJ noted that plaintiff is limited to simple, routine, repetitive tasks in a low-stress job, which was defined as having only occasional changes in the work setting, and she should not perform any fast-paced production rate or pace work. In making this assessment, the ALJ noted that although plaintiff's medically determinable impairments could be expected to cause some of the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible." (Tr. 24). At step four, the ALJ concluded that plaintiff was able to perform her past relevant work as a mail sorter. In an alternative finding, at step five, the ALJ found that in light of plaintiff's age,

---

[1] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. See 20 C.F.R. § 416.967(b). An individual that can do light work can also do sedentary work, unless there are additional limitations such as loss of fine dexterity or an inability to sit for extended periods of time. Id.

education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that she can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act from her application date, March 1, 2011, through the date of the ALJ's decision, January 12, 2015.

B.      Analysis

Plaintiff objects to the M&R's finding that her combination of mental impairments did not meet or medically equal Listing 12.02. See Objection (DE 35) at 3-5. In particular, plaintiff contends that she satisfied her burden of proof at step three in the sequential evaluation because she met Listing 12.02 in two ways: 1) through criteria in paragraphs (A)(2) and (B)(2)-(3) and 2) through criteria in paragraphs in (A)(3) and (B)(2)-(3).[2] Id. at 5.

The Listings describe impairments that are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. 416.925(a). In the Listings, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). To satisfy the requirements of the Listings, a claimant's impairment must "meet all of the specified medical criteria." Id. (emphasis in original).

Listing 12.02 addresses "organic mental disorders," and is met when history and medical evidence "demonstrate the presence of a specific organic factor judged to be etiologically related

_____

[2] Plaintiff's brief actually states that she meets Listing 12.02 in the following two ways:
1) through crieria in paragraphs (A)(2) and (B)(2)-(3) and 2) through criteria in paragraphs (A)(5) and (B)(2)-(3). See Objection (DE 35) at 5. Plaintiff's reference to (A)(5) appears to be a typographical error. Based on the context of plaintiff's brief, it appears that she intended to reference paragraph (A)(3).

to the abnormal mental state and loss of previously acquired functional abilities."[3]  20 C.F.R. Pt.

404, Subpt. P, App. 1, § 12.02 (introductory paragraph).  In order to establish the required level of

severity for an organic mental disorder, a claimant must satisfy the following: (1) the diagnostic

criteria in the introductory paragraph, (2) the criteria in both paragraphs A and B, or (3) the criteria

in paragraph C.  Id.

> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>
> 1. Disorientation to time and place; or
>
> 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
>
> 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
>
> 4. Change in personality; or
>
> 5. Disturbance in mood; or
>
> 6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
>
> 7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.;
>
> AND
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or

---

[3] Listing 12.02 has been updated since the date of the ALJ's decision.  Because the ALJ issued her decision on January 12, 2015, the Listings in effect at that time will apply.  See 81 Fed. Reg. 66138 n.1, 2016 WL 5341732 *66138 n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.")

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Id.

Plaintiff initially argues that the magistrate judge erred in finding that she did not satisfy paragraphs (A)(2) and (A)(3). See Objections (DE 35) at 3. In support of this argument, plaintiff points to the following objective evidence: (1) her lack of a driver's license; (2) her history of working only minimally skilled jobs; (3) her history of incarceration/imprisonment; and (4) her psychiatric hospitalization for alcohol and cocaine dependence and depression. Id. Plaintiff suggests that this evidence coupled with the observations of the mental health professionals who evaluated her demonstrates memory impairment and perceptual or thinking disturbances. Id.

Having considered the entire record, this court finds plaintiff's argument to be unpersuasive. In particular, extensive reports from the evaluating mental health professionals in this case foreclose plaintiff's argument. On May 15, 2006, plaintiff was evaluated by Gary Bachara, Ph.D. (Tr. 481-

84).  Dr. Bachara opined that plaintiff's remote memory for childhood events, ages, and anniversaries was "fairly good."  (Tr. 482).  Then, on August 2, 2006, plaintiff was evaluated by Edward V. English, M.A., to assess her cognitive abilities (IQ), along with memory functioning.  (Tr. 486-89).  English evaluated plaintiff using the Wechsler Memory Scale and opined as follows:

> It does appear that her memory functioning is slightly higher across the board than her cognitive level although not significantly.  There are deficiencies in her memory functioning and most of her scores fall within "borderline" range.

(Tr. 488).  On March 18, 2010, plaintiff was evaluated by Carol M. Gibbs, M.D. (Tr. 549-51).  On that date, plaintiff had an asthma attack, so Dr. Gibbs was unable to complete the cognitive portion of the exam and expressed no opinions regarding plaintiff's memory. (Tr. 550).  Finally, on January 10, 2012, plaintiff was evaluated by Christopher M. Ricci, Ph.D., and he conducted a comprehensive clinical psychological evaluation.  (Tr. 725-27).  Dr. Ricci determined that plaintiff's recent and remote memory skills appeared to be mildly-to-moderately impaired secondary to possibly limited intellectual functioning, which was evidenced by her inability to recall three out of three objects immediately and one out of three objects after five minutes.  (Tr. 726).

Of the four mental health professionals that evaluated plaintiff, only three made findings with respect to memory. Importantly, these findings do not rise to the level required in paragraph (A)(2).  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02(A)(2) (requiring short-term memory impairment, defined as an inability to learn new information; intermediate memory impairment; or long-term memory impairment, defined as an inability to remember information that was known sometime in the past).  In sum, the magistrate judge's finding that plaintiff did not satisfy the paragraph (A)(2) criteria is supported by substantial evidence.

As for plaintiff's thinking disturbances under paragraph (A)(3), only one of the four mental health professionals who evaluated plaintiff found <u>any</u> sign of thinking disturbances. Dr. Gibbs noted that plaintiff reported she could hear strange people talking and the sound of footsteps in her living room. (Tr. 549). Plaintiff also reported that she could hear people trying to come into the door. (Tr. 549). The other three evaluating mental health professionals found <u>no</u> evidence of thought disorder, hallucinations, delusions, or paranoia. (Tr. 482, 487, 726). In light of the record as a whole, the magistrate judge's finding that plaintiff did not satisfy the paragraph (A)(3) criteria is supported by substantial evidence.

In her second and final argument, plaintiff argues that the ALJ erred by finding that she did not have "marked" deficits in concentration, persistence, or pace.[4] <u>See</u> Objection (DE 35) at 4. The ALJ concluded that the paragraph B criteria were not satisfied because plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration. (Tr. 21-22, 89, 90, 162, 266, 459, 483, 550, 554, 726-27).

Even if plaintiff prevailed on this argument, she would still fail to satisfy paragraph B's requirement that a claimant experience <u>at least</u> two "marked" limitations listed in paragraph B or one "marked" limitation and "repeated" episodes of decompensation. Consequently, the ALJ's finding that plaintiff fails to satisfy the criteria of paragraph B is supported by substantial evidence.

---

[4] A "marked" limitation "interfere[s] seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).

In sum, remand is not required in this case, where the ALJ's finding that plaintiff's combination of mental impairments did not meet or medically equal Listing 12.02 is supported by substantial evidence and was reached through application of the correct legal standard.  See <u>Craig</u>, 76 F.3d at 589.

**CONCLUSION**

Based on the foregoing, this court ADOPTS the recommendation in the M&R.  Plaintiff's motion for judgment on the pleadings (DE 24) is DENIED, and defendant's motion for judgment on the pleadings (DE 28) is GRANTED.  The clerk of court is DIRECTED to close this case.

SO ORDERED this 26th day of June, 2017.


LOUISE W. FLANAGAN
United States District Judge